# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-8017

WILLIAM SCHORSCH, individually and
on behalf of others similarly situated,

*Plaintiff-Respondent*,

v.

HEWLETT-PACKARD COMPANY,

*Defendant-Petitioner*.

———————

Petition for Leave to Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 3397—**Ruben Castillo**, *Judge*.

———————

SUBMITTED JULY 20, 2005—DECIDED AUGUST 8, 2005

———————

Before EASTERBROOK, WILLIAMS, and SYKES, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Ever since Congress enacted the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (2005), defendants have been trying to remove suits that were pending in state court on February 18, 2005, although the statute applies only to suits "commenced" after that date. We have rejected two of these attempts in published opinions. See *Knudsen v. Liberty Mutual Insur-*

*ance Co.*, No. 05-8010 (7th Cir. June 7, 2005); *Pfizer, Inc. v. Lott*, No. 05-8013 (7th Cir. August 4, 2005) (in circulation). Today's opinion makes a third.

*Knudsen* holds that a case is "commenced" when it begins, and that a routine amendment to the complaint does not commence a new suit. Amendments could in principle initiate litigation, however: a defendant added after February 18 could remove because suit *against it* would have been commenced after the effective date, and tacking a wholly distinct claim for relief onto an old suit likewise might commence a new proceeding. Hewlett-Packard (HP) seeks to take advantage of these provisos.

Schorsch filed suit in Illinois in 2003, proposing to represent a class of persons who purchased from HP drum kits for use in its printers. A "drum kit" contains some of the drums and rollers that fuse the toner to the paper. Components wear out, and HP includes sensors that detect when this process has gone far enough that quality of the printer's output (or the integrity of the printer's other components) may be jeopardized. First the printer warns the customer that the drum kit needs replacing. After a given number of additional pages have been printed, an EEPROM chip tells the printer to stop working until a new drum kit has been installed. (EEPROM stands for "electrically erasable programmable read only memory.") Schorsch contends that this cutoff injures consumers who want to press their luck or accept lower-quality output at the end of a drum kit's life cycle. The total asserted damages exceed $5 million, the class size exceeds the statutory threshold, and HP is not a citizen of Illinois, so but for its filing date this suit could have been removed under the 2005 Act.

In May 2005 Schorsch tendered a proposed second amended complaint that would expand the class from purchasers of drum kits to purchasers of all printer consumables that contain EEPROM chips. Schorsch believes that

HP's toner cartridges (for laser printers) and ink cartridges (for ink-jet printers) also contain EEPROMs. HP then removed the proceeding to federal court, contending that this expansion of the class commenced a new suit. The district judge thought otherwise and remanded; HP asks us for interlocutory review under 28 U.S.C. §1453(c)(1), as amended by the 2005 Act. See also Fed. R. App. P. 5. HP contends that the new class definition adds both parties (those class members who purchased cartridges but not drum kits) and claims (for HP sells many more ink or toner cartridges than drum kits). The proposed amendment certainly does not add *parties* to the suit: there were and are only two, Schorsch and HP. Class members are represented vicariously but are not litigants themselves. Compare *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), with *Devlin v. Scardelletti*, 536 U.S. 1 (2001). And it is hard to see the change in class definition as the addition of a new claim either.

From its outset, this suit has been about HP's use of EEPROM chips to shut down its printers until a component has been replaced. Identity of the consumable is a detail. HP tells us that its toner cartridges and ink cartridges do not contain EEPROM chips, and if so then the change in the proposed definition has no effect beyond making notice to the class a little more costly. But let us assume that Schorsch is right. This is still just one suit, between the original litigants. Litigants and judges regularly modify class definitions; *Knudsen* holds that such changes do not "commence" new suits.

HP insists that *this* change does, because litigation based on EEPROM chips in toner or ink cartridges is so different from litigation based on EEPROM chips in drum kits that the second amended complaint does not relate back to the first. On that view two periods of limitation apply: one (for drum kits) measured from the original complaint in October 2003, and the other (for cartridges) measured from the proposed amendment in May 2005. That would be the sort

of addition that, we conjectured in *Knudsen*, might "commence" a new action. But HP does not really believe this. It removed the *whole* suit, not just the claim based on cartridges—though its theory of removal supposes that Schorsch commenced a piece of litigation distinct from the drum-kit claim. Likely the reason HP tried to remove the whole shebang is that drum kits and cartridges are consumables for printers made by one firm and subject to one set of legal rules; it would be silly to handle drum kits in state court and toner or ink cartridges in federal. Yet to say this is effectively to say that there is only one "claim" to begin with.

Although we used Fed. R. Civ. P. 15(c) in *Knudsen* to illustrate the difference between claims that relate back and those that do not (and so may be treated as commenced when added to the suit), state rather than federal practice must supply the rule of decision. Federal law makes the date of "commencement" important, but different legal systems understand that term differently. Federal practice deems a suit "commenced" when the complaint is filed, see Fed. R. Civ. P. 3, but some states may deem it commenced when the filing fee is paid, or when the clerk finds the complaint procedurally sufficient (states may allow clerks to reject papers that are not in proper form, as the Clerk of the Supreme Court does), or when the first (or last) defendant is served with process. Cf. *Pace v. DiGuglielmo*, 125 S. Ct. 1807 (2005) (looking to state law to determine when a pleading has been "properly filed" for purposes of a federal time limit). Illinois has a relation-back rule that is functionally identical to Rule 15(c), however, so we need not fret over fine points. See 735 ILCS 5/2-616(b); see also *Zeb v. Wheeler*, 111 Ill. 2d 266, 279-80, 489 N.E.2d 1342, 1348-49 (1986) (relying on cases under Rule 15(c) to elucidate the meaning of the state relation-back statute).

In Illinois, a claim relates back when it arises out of the same transaction or occurrence as the one identified in the

original complaint. Cf. *Mayle v. Felix*, 125 S. Ct. 2562 (2005) (discussing Rule 15(c), which covers the same "conduct" as well as the same "transaction or occurrence"). It is apt to describe the challenged "transaction" as HP's inclusion in consumables of chips that cause printers to stop working before the consumer has wrung the last iota of use from the product. HP has not cited any case, in either Illinois or federal court, treating a similar amendment to the class definition as commencing a new proceeding.

An amendment relates back in Illinois when the original complaint "furnished to the defendant all the information necessary . . . to prepare a defense to the claim subsequently asserted in the amended complaint." *Boatmen's National Bank of Belleville v. Direct Lines, Inc.*, 167 Ill. 2d 88, 102, 656 N.E.2d 1101, 1107 (1995) (internal quotation marks omitted). The October 2003 complaint did this. The propriety of using EEPROM chips is an all-or-none affair; HP has not suggested any way in which it might be entitled to implement end-of-life rules for drum kits but not cartridges, or the reverse. It does not contend, for example, that it informed consumers of one but not the other, or that it solicited purchasers' consent with respect to one but not the other.

This may mean that plaintiffs lose (and quickly) across the board: no rule of law requires drum kits or toner cartridges or any other consumer product to last for any prescribed period. If it would be lawful in Illinois for HP to fill cartridges with enough toner to last (on average) 3,000 pages, why would it not be lawful to include more toner (enough to *ensure* 3,000 pages of use) and then require replacement at that point, before the streaking and spotty output that marks the end of a cartridge's supply of toner? Consumers are better off with the second kind of cartridge than with the first. Much the same may be said for ink cartridges and drum kits. If HP had promised that its toner cartridges would last for 3,500 pages, then used an

EEPROM to shut them down after 3,000, Schorsch would have a better claim, but this does not appear to be the class's theory. Yet it is not our job to resolve the case on the merits; all we need do is observe that the second amended complaint concerns the same "transaction" as a matter of Illinois law.

*Knudsen* and *Pfizer* hold, and we reiterate, that creative lawyering will not be allowed to smudge the line drawn by the 2005 Act: class actions "commenced" in state court on or before February 18, 2005, remain in state court. Amendments to class definitions do not commence new suits. We can imagine amendments that kick off wholly distinct claims, but the workaday changes routine in class suits do not. Defendants should recognize that 28 U.S.C. §1447(c) makes an award of attorneys' fees the norm for improper removal. See *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407 (7th Cir. 2000). So although we deny the petition for an interlocutory appeal in this case, we also invite the plaintiffs to file (in the district court) an appropriate request for reimbursement of the additional legal expenses to which they have been put by HP's efforts to move this litigation from state to federal court.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*